IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.

PROBUILD HOLDINGS, INC. and
PROBUILD COMPANY LLC f/k/a PROBUILD EAST LLC,

    Plaintiffs,

    v.

GRANITE STATE INSURANCE COMPANY;
LIBERTY MUTUAL FIRE INSURANCE COMPANY;
TRAVELERS PROPERTY CASUALTY INSURANCE COMPANY OF NORTH AMERICA;
THE HARTFORD CASUALTY INSURANCE COMPANY;
THE HARTFORD FIRE INSURANCE COMPANY;
CONTINENTAL CASUALTY COMPANY;
FIREMEN'S FUND INSURANCE COMPANY;
ST. PAUL FIRE & MARINE INSURANCE COMPANY;
NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PENNSYLVANIA;
EVANSTON INSURANCE COMPANY and
EVEREST NATIONAL INSURANCE COMPANY,

    Defendants.

## COMPLAINT

***COME NOW*** the Plaintiffs, ProBuild Holdings, Inc. and ProBuild Company LLC f/k/a ProBuild East LLC ("Plaintiffs"), by and through their attorneys, GARLIN DRISCOLL HOWARD LLC, and as and for their Complaint against the Defendants, state, allege, and aver as follows:

53548.5

## INTRODUCTION

1. This is an insurance coverage dispute. Plaintiffs, suppliers of building materials, are the targets of pending and potential lawsuits alleging that Plaintiffs or their predecessors supplied drywall imported from China that caused property damage to residential homes and bodily injury to homeowners and occupants ("the Chinese Drywall claims"). The Defendants each issued general, umbrella or excess liability policies that afford coverage to Plaintiffs against such losses.

2. As Plaintiffs have learned of each new Chinese Drywall claim, Plaintiffs have timely notified those Defendants whose policies afford coverage for the Chinese Drywall claim and have requested that each insurer provide a defense to the underlying claim. No Defendant has agreed unconditionally to provide Plaintiffs with a defense to any Chinese Drywall claim. Four Defendants have agreed, after months of negotiations, to satisfy Plaintiffs' defense costs subject to numerous reservations of rights letters. Shortly after agreeing to participate in Plaintiffs' defense, one of these Defendants, Granite State Insurance Company ("Granite State"), filed a declaratory judgment action against Plaintiffs on February 19, 2010 in the United States District Court for the Southern District of Florida disclaiming any coverage obligations and demanding repayment of defense costs. No other insurers are included in the Florida action. Granite State filed its lawsuit without any warning and, after filing its Complaint, continued to represent to Plaintiffs that it had *not* reached a final coverage determination with respect to certain of the Chinese Drywall claims.

3. Plaintiffs respectfully seek a declaratory judgment that Granite State, and Defendants Liberty Mutual Fire Insurance Company, Travelers Property Casualty Company of

North America, The Hartford Insurance Company, Continental Casualty Company and The Hartford Fire Insurance Company (together the "Primary Insurers") are jointly and severally liable to defend and indemnify Plaintiffs for all losses arising out of the Chinese Drywall claims. Moreover, Plaintiffs also seek a determination that Defendant Granite State has breached the duty of good faith and fair dealing owed to Plaintiffs.  Finally, Plaintiffs seek a declaratory judgment that Defendants Firemen's Fund Insurance Company, National Union Fire Insurance of Pittsburgh, Pennsylvania, Evanston Insurance Company, Everest National Insurance Company and St. Paul Fire & Marine Insurance Company (the "Umbrella and Excess Insurers") are jointly and severally liable to indemnify Plaintiffs for loss, ultimate net loss and costs arising from the Chinese Drywall claims.

## THE PARTIES

4. Plaintiff ProBuild Holdings, Inc. ("PHI") is a corporation formed under Delaware law with its principal place of business in the City and County of Denver, Colorado.

5. Plaintiff ProBuild Company LLC ("ProBuild") is also a corporation formed under Delaware law with its principal place of business in Denver, Colorado.  ProBuild was formerly known as "ProBuild East LLC," which itself was formerly known as The Contractor Yard, Inc. ("TCY").  TCY acquired Rosen Building Supplies, Inc. ("Rosen") in December 2007.

6. Defendant Granite State is an insurance company incorporated under Pennsylvania law with its principal place of business in Pennsylvania and its executive offices in New York.  Granite State is authorized to sell insurance in Colorado.

7. Defendant Liberty Mutual Insurance Company ("Liberty Mutual") is an insurance company incorporated under Massachusetts law with its principal place of business in Massachusetts. Liberty Mutual is authorized to sell insurance in Colorado.

8. Defendant The Hartford Insurance Company ("Hartford") is an insurance company incorporated under Indiana law with its principal place of business in Indiana and its executive offices in Connecticut. Hartford is authorized to sell insurance in Colorado.

9. Defendant Travelers Property Casualty Indemnity Company of North America ("Travelers") is an insurance company incorporated under Connecticut law with its principal place of business in Connecticut. Travelers is authorized to sell insurance in Colorado.

10. Defendant Continental Casualty Company ("CNA") is an insurance company incorporated under Illinois law with its principal place of business in Illinois. CNA is authorized to sell insurance in Colorado.

11. Defendant The Hartford Fire Insurance Company ("Hartford Fire") is an insurance company incorporated under Connecticut law with its principal place of business in Connecticut. Hartford Fire is authorized to sell insurance in Colorado.

12. Defendant Firemen's Fund Insurance Company ("Firemen's Fund") is an insurance company incorporated under California law with its principal place of business in California. Firemen's Fund is authorized to sell insurance in Colorado.

13. Defendant Everest National Insurance Company ("Everest") is an insurance company incorporated under Delaware law with its principal place of business in New Jersey. Everest is authorized to sell insurance in Colorado.

14. Defendant St. Paul Fire & Marine Insurance Company ("St. Paul") is an insurance company incorporated under Minnesota law with its principal place of business in Minnesota. St. Paul is authorized to sell insurance in Colorado.

15. Defendant National Union Fire Insurance of Pittsburgh, Pennsylvania ("National Union") is an insurance company incorporated under Pennsylvania law with its principal place of business in New York. National Union is authorized to sell insurance in Colorado.

16. Defendant Evanston Insurance Company ("Evanston") is an insurance company incorporated under Illinois law with its principal place of business in Illinois. Evanston is authorized to sell insurance in Colorado.

## JURISDICTION AND VENUE

17. The Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because the matter in controversy exceeds the sum or value of $75,000.00 exclusive of interest and costs, and the parties have their principal places of business in, and are therefore citizens of, different states.

18. Venue is appropriate in this district pursuant to 28 U.S.C. § 1391(a)(3) because the Plaintiffs are citizens of Colorado and because each of the Defendants are authorized to sell insurance in Colorado and are subject to personal jurisdiction in this judicial district.

19. Pursuant to 28 U.S.C. § 2201, Plaintiffs are entitled to seek a declaration of Defendants' obligations under one or more contracts of insurance issued by Defendants and affording coverage to Plaintiffs.

## FACTS

### *The Underlying Chinese Drywall claims*

20. Plaintiffs currently provide and have provided construction supply materials, including drywall, to residential and commercial builders and subcontractors around the country.

21. In early 2009, Plaintiffs began receiving claim notices related to Rosen and TCY's alleged importation and sale of drywall. The claims either against Rosen or TCY state that they imported drywall from China (hereinafter "Chinese Drywall" or "CDW") and then sold the drywall to builders and subcontractors, who allegedly installed the drywall in residential homes between 2003 and 2007.

22. The Chinese Drywall claims allege property damage to the structure and contents of buildings and various parts of mechanical systems such as air-conditioner and refrigerator coils, electrical wires and other household appliances.

23. In some cases, the Chinese Drywall claims also allege bodily injury to the occupants of homes in which CDW was installed.

24. Plaintiffs and the other predecessor insureds have been named as defendants in thirteen CDW-related lawsuits at this time.

25. Six of the CDW-related lawsuits were brought by individual homeowners or occupants in Florida state court. Three of these actions, *Casey v. Centerline Homes, et al.*, *Quackenbush v. Centerline Homes, et al.* and *Mueller v. Centerline Homes, et al.*, were subsequently dismissed without prejudice by the claimants. A list of the state court actions is attached hereto as Exhibit A.

26. Four of the CDW-related lawsuits were brought by individual homeowners or occupants in federal court. These actions were transferred for discovery and consolidated with many other cases in multidistrict litigation pending before the United States District Court for the Eastern District of Louisiana. One action, *Gill v. Knopf Gips KG, et al.*, was subsequently dismissed without prejudice. Also filed in the multidistrict litigation was an Omnibus Complaint on behalf of numerous plaintiffs against numerous defendants, *Payton v. Knopf Gips KG, et al.*, Case No. 09-cv-07628. The only claimant against Plaintiffs listed in the Omnibus Complaint is Hugh Casey. A list of the federal court actions is attached hereto as Exhibit B.

27. One lawsuit, *Lennar Homes LLC v. Knauf Gips, KG, et al.*, was brought by a homebuilder that itself faces Chinese Drywall claims in which the homebuilder asserts that it is entitled to compensation from a number of different drywall suppliers, manufacturers and subcontractors, including Plaintiffs. *See also* Ex. A.

28. Finally, Rosen is named as a defendant in a second CDW-related Omnibus Complaint filed in the Eastern District of Louisiana, *Wiltz v. Knauf Gips, KG, et al*. *See also* Ex. B. The complaint contains no allegations specific to Rosen, but on information and belief the only claimant against Rosen appears to be another homebuilder.

29. Apart from the thirteen filed lawsuits, Plaintiffs have received pre-suit notices from claimants for approximately fourteen other Chinese Drywall claims, eleven by individual homeowners and three by homebuilders. A list of these claimants is attached hereto as Exhibit C.

30. Plaintiffs will provide all of the complaints and pre-suit notice letters in the Chinese Drywall claims on the Court's request.

*Applicable Policies*

31.     The insurance policies affording coverage for the losses arising from the underlying Chinese Drywall claims as well as any additional Chinese Drywall claims consist of primary liability insurance policies issued by the Primary Insurers to Plaintiffs or their predecessors (the "Primary Policies") and umbrella or excess liability insurance policies issued by the Umbrella and Excess Insurers to Plaintiffs or their predecessors (the "Umbrella and Excess Policies") (together "the Policies").

32.     Plaintiffs or their predecessors paid the full premium due on each of the Policies, and the Defendants have accepted and retained the benefits of those premium payments.

33.     The definitions of "bodily injury" are similar throughout the Policies. Typically, as in the Granite State Policy, "bodily injury" means "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." *See* Exhibit D, attached hereto.

34.     The definitions of "property damage" are similar throughout the Policies. Typically, as in the Travelers Policies, "property damage" means "physical injury to tangible property, including all resulting loss of use of that property" and "loss of use of tangible property that is not physically injured." *See* Exhibit E, attached hereto.

35.     The definitions of "occurrence" are similar throughout the Policies. Typically, as in the Liberty Mutual Policies, "occurrence" means "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *See* Exhibit F, attached hereto.

36. All of the Chinese Drywall claims allege "bodily injury" or "property damage," or both, caused by an "occurrence."

37. Travelers issued primary Policy No. Y-660-7173B851, for the period February 16, 2005 to February 16, 2006; and primary Policy No. Y-660-0315L149, for the period February 16, 2007 to February 16, 2008 (the "Travelers Policies").

38. Granite State issued primary Policy No. 02-LX-008998075-0/000, for the period February 16, 2006 to February 16, 2007 ("Granite State Policy").

39. Hartford issued primary Policy No. 83 SBF SZ6581, for the original period September 19, 2000 to September 19, 2001 and then renewed annually until the period ending on November 5, 2004; and primary Policy No. 83 UUN SZ0449, for the original period November 5, 2004 to November 5, 2005 and then renewed for the period November 5, 2005 to October 31, 2006.

40. Liberty Mutual issued primary Policy No. TB2-641-437334-037, for the period May 1, 2007 to May 1, 2008; and primary Policy No. TB2-641-437334-038, for the period May 1, 2008 to May 1, 2009 (the "Liberty Mutual Policies").

41. CNA issued primary Policy No. GL251921515, for the period December 31, 2004 to December 31, 2005; primary Policy No. GL2071098662, for the period December 31, 2005 to December 31, 2006; and primary Policy No. GL2071099441, for the period December 31, 2006 to May 1, 2007.

42. Hartford Fire issued primary Policy No. 13UENU14665, for the period December 31, 2002 to December 31, 2003 and renewed annually until December 31, 2004.

43. Firemen's Fund issued umbrella Policy No. SUO-000-8778-4535, for the period February 16, 2005 to February 16, 2006; umbrella Policy No. SUO-000-8778-4534, for the period February 16, 2006 to February 16, 2007; and umbrella Policy No. SUO-000-8898-0636, for the period February 16, 2007 to February 16, 2008.

44. Everest issued excess Policy No. 71C8000023071, for the period May 1, 2007 to May 1, 2008; and excess Policy No. 71C8000023081, for the period May 1, 2008 to May 1, 2009.

45. St. Paul issued umbrella Policy No. QY05506161, for the period December 31, 2002 to December 31, 2003; umbrella Policy No. QZ06806047, for the period December 31, 2003 to December 31, 2004; umbrella Policy No. QZ06806127, for the period December 31, 2004 to December 31, 2005; and umbrella Policy No. QZ06825156, for the period December 31, 2005 to May 1, 2007.

46. National Union issued excess Policy No. 9834904, for the period May 1, 2007 to May 1, 2008; and excess Policy No. 8766470, for the period May 1, 2008 to May 1, 2009.

47. Evanston issued excess Policy No. XONJ154402, for the period December 31, 2002 to December 31, 2003; and excess Policy No. XONJ154403, for the period December 31, 2003 to December 31, 2004.

*Notice, Failure to Provide Coverage and Granite State's Breach of the Duty of Good Faith and Fair Dealing*

48. Plaintiffs provided timely and proper notice under each potentially applicable Primary, Umbrella and Excess Policy issued by the Defendants for each of the Chinese Drywall claims.

49. Plaintiffs have satisfied fully all conditions precedent and obligations under the Primary, Umbrella and Excess Policies.

50. The Defendants all have denied coverage, reserved their rights, failed to reply to Plaintiffs' notice letters, or otherwise failed to acknowledge coverage for defense or indemnity under the Primary, Umbrella and Excess Policies.

51. The Defendants have the burden of proof on all coverage exclusions in the Primary, Umbrella and Excess Policies.

52. The Defendants will not be able to meet their burden that any exclusion applies to limit or preclude Plaintiffs' demand for coverage of the Chinese Drywall claims.

53. Four of the Primary Insurers -- Granite State, Travelers, Hartford and Liberty Mutual -- agreed to afford Plaintiffs a defense to certain Chinese Drywall claims subject to reservations of rights to terminate coverage at a later time. Although these Defendants received notice of the Chinese Drywall claims as early as April 2009, they failed to agree to satisfy defense costs until February 2010. From August 2009, when outside defense counsel began working on the Chinese Drywall claims, to February 2010, counsel and experts in the underlying CDW-related lawsuits went unpaid.

54. The four Primary Insurers have sent Plaintiffs numerous requests for information. For example, with respect to various pre-suit claims, Defendant Granite State sent a letter on January 19, 2010 requesting, among other things, "[d]etails regarding the Drywall claims," including "the status of the claims, the damages asserted, and your response to such claims"; the results of any investigations regarding the purchase or sale of Chinese Drywall by Rosen or another of Plaintiffs' affiliates; "[a]ny and all reports regarding testing or inspection" of the

properties that are the subject of the Chinese Drywall claims; "a monthly report on any defense and/or indemnity payments expended" with respect to each Chinese Drywall claim; and a complete accounting of all the Chinese Drywall claims. *See* Exhibit G, attached hereto. Granite State made similar requests for information in over a dozen other letters to Plaintiffs relating to the Chinese drywall claims that it sent between late December 2009 and late January 2010.

55. On February 19, 2010, after Plaintiffs had supplied certain information to Granite State but before Plaintiffs had finished supplying all the requested information, Granite State filed a declaratory judgment action against Plaintiffs in the United States District Court for the Southern District of Florida, case number 10-CV-60246. *See* Exhibit H, attached hereto, without exhibits. In its Complaint, Granite State asserts that it has no legal obligation to provide any defense or indemnification coverage to Plaintiffs for any Chinese Drywall claim. Granite State also asserts that it has the right to reimbursement for any defense costs that it already has paid.

56. Although Granite State filed its declaratory judgment action on February 19, on February 25, 2010 Granite State represented to Plaintiffs' lead defense counsel in the CDW-related lawsuits that Granite State had "not yet taken a formal coverage position" with respect to certain Chinese Drywall claims that are attached to its Complaint disclaiming coverage. *See* Exhibit I, attached hereto; Exhibit J, attached hereto. The Granite State claims representative did not disclose to lead defense counsel the existence of Granite State's pending declaratory judgment action.

## COUNT I

### DECLARATORY JUDGMENT - DUTY TO DEFEND
### Against Granite State, Travelers, Hartford, Liberty Mutual, CNA and Hartford Fire

57.   Plaintiffs incorporate by reference Paragraphs 1 through 56 of this Complaint, inclusive, as if fully set forth herein.

58.   The Primary Policies obligate the Primary Insurers to afford Plaintiffs an unconditional and ongoing defense, and to pay future defense fees and costs arising from the Chinese Drywall claims.

59.   An actual and justiciable controversy exists between Plaintiffs and the Primary Insurers as to the Primary Insurers' duty to defend Plaintiffs, and to pay future defense fees and costs arising from the Chinese Drywall claims.

60.   Pursuant to 28 U.S.C. § 2201, Plaintiffs are entitled to a declaratory judgment that, pursuant to the terms of the Primary Policies, the Primary Insurers owe Plaintiffs an unconditional and ongoing duty to defend, and to pay future defense fees and costs arising from the Chinese Drywall claims.

## COUNT II

### DECLARATORY JUDGMENT - DUTY TO INDEMNIFY
### Against Granite State, Travelers, Hartford, Liberty Mutual, CNA and Hartford Fire

61.   Plaintiffs incorporate by reference Paragraphs 1 through 56 of this Complaint, inclusive, as if fully set forth herein.

62.   The Primary Policies obligate the Primary Insurers to indemnify, and to pay for any liability or settlements incurred by Plaintiffs arising from the Chinese Drywall claims.

63. An actual and justiciable controversy exists between Plaintiffs and the Primary Insurers as to the Primary Insurers' duty to indemnify, and to pay for any liability or settlements incurred by Plaintiffs arising from the Chinese Drywall claims.

64. Pursuant to 28 U.S.C. § 2201, Plaintiffs are entitled to a declaratory judgment that, pursuant to the terms of the Primary Policies, the Primary Insurers owe Plaintiffs a duty to indemnify, and to pay for any liability or settlements incurred by Plaintiffs arising from the Chinese Drywall claims.

## COUNT III

### BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING
### Against Granite State Only

65. Plaintiffs incorporate by reference Paragraphs 1 through 56 of this Complaint, inclusive, as if fully set forth herein.

66. Granite State owes Plaintiffs a duty of good faith and fair dealing that obligates Granite State to act reasonably in handling the Chinese Drywall claims.

67. Granite State's duty of good faith and fair dealing obligates Granite State to conduct a reasonable investigation of the facts and circumstances of Plaintiffs' request for defense and indemnity in connection with the Chinese Drywall claims, without a predisposition to deny coverage.

68. Granite State's duty of good faith and fair dealing obligates Granite State to place as much, or greater, emphasis on Plaintiffs' financial interests as on Granite State's financial interests.

69. Granite State's duty of good faith and fair dealing obligates Granite State to refrain from asserting unreasonable arguments in response to Plaintiffs' request for defense and indemnity in connection with the Chinese Drywall claims.

70. Granite State sent numerous reservation of rights letters to Plaintiffs between late December 2009 and January 2010 regarding the Chinese Drywall claims and asserting numerous grounds upon which Granite State reserved its rights to deny coverage.

71. In the reservation of rights letters, Granite State asserted that it was continuing to conduct its investigation into Plaintiffs' claims for coverage, and, as part of its investigation, Granite State made dozens of requests for documents and information.

72. Granite State asserted in its reservation of rights letters that it needed the documents and information it had requested to conduct its investigation, which would include the possible application of various potential exclusions to coverage that might bar coverage for Plaintiffs' claims.

73. Plaintiffs had provided Granite State with some of the information requested by Granite State in its reservation of rights letters by February 19, 2010. Plaintiffs were in the process of gathering additional documents in response to Granite State's requests for documents and information, and had informed Granite State of their efforts.

74. Granite State did not have in its possession much of the information it had requested from Plaintiffs at the time it filed its lawsuit for declaratory relief, which asserted that numerous exclusions to coverage operated to preclude coverage for Plaintiffs' claims.

75. Granite State, in requesting information upon which to conduct its investigation, but then suing Plaintiffs before it had received that information, acted unreasonably, and had no

reasonable basis upon which to assert in its lawsuit that numerous exclusions operated to bar coverage for Plaintiffs' claims.

76. On February 25, 2010, lead defense counsel for Plaintiffs in the CDW-related lawsuits asked Granite State about the status of its contribution to defense cost payments for various CDW-related lawsuits.

77. On February 25, 2010, six days after Granite State filed its Florida lawsuit, the lead claims handler for Granite State who had signed all of the reservation of rights letters responded to the inquiry from Plaintiffs' lead defense counsel by stating that Granite State had "not yet taken a formal coverage position in connection with [the CDW-related lawsuits] **as we are awaiting additional information from the insured**." (emphasis supplied).

78. Granite State acted unreasonably toward Plaintiffs by filing its Florida lawsuit for declaratory judgment alleging that numerous fact-based exclusions to coverage operated to bar coverage for Plaintiffs' claims, despite admittedly "awaiting additional information from" Plaintiffs at the time it filed its Florida lawsuit.

79. The Granite State policies do not contain an express provision requiring the reimbursement of defense costs advanced pursuant to a reservation of rights if it is later determined that there is no coverage for the insured's claim.

80. Granite State acted unreasonably in asserting in its reservation of rights letters, and in its Florida lawsuit, that it has a right to reimbursement of defense costs advanced pursuant to a reservation of rights if it is later determined that there is no coverage for the insured's claim.

81. As a direct and proximate result of these and other acts in breach of Granite State's duty of good faith and fair dealing, Plaintiffs have suffered damages in an amount to be

proven at trial including, but not limited to, attorneys' fees, costs, loss of use of funds, expenses and other damages.

## COUNT IV

### DECLARATORY JUDGMENT- DUTY TO INDEMNIFY
### Against Firemen's Fund, St. Paul, Everest, National Union and Evanston

82. Plaintiffs incorporate by reference Paragraphs 1 through 56 of this Complaint, inclusive, as if fully set forth herein.

83. The Umbrella and Excess Policies obligate the Umbrella and Excess Insurers to indemnify Plaintiffs against loss, ultimate net loss and costs arising from the Chinese Drywall claims.

84. An actual and justiciable controversy exists between Plaintiffs and the Umbrella and Excess Insurers as to the Umbrella and Excess Insurers' duty to indemnify Plaintiffs for loss, ultimate net loss and costs arising from the Chinese drywall claims.

85. Pursuant to 28 U.S.C. § 2201, Plaintiffs are entitled to a declaratory judgment that, pursuant to the terms of the Umbrella and Excess Policies, the Umbrella and Excess Insurers owe Plaintiffs a duty to indemnify for loss, ultimate net loss and costs arising from the Chinese Drywall claims.

## PRAYER FOR RELIEF

*WHEREFORE*, Plaintiffs pray for Judgment as follows:

A. On Count I, Judgment in Plaintiffs' favor declaring that the Primary Insurers owe Plaintiffs an unconditional and ongoing duty to defend, and to pay future defense fees and costs arising from the Chinese Drywall claims.

B. On Count II, Judgment in Plaintiffs' favor declaring that the Primary Insurers owe Plaintiffs a duty to indemnify, and to pay for any liability or settlements arising from the Chinese Drywall claims.

C. On Count III, Judgment in Plaintiffs' favor and against Granite State for actual, consequential and punitive damages for breach of the duty of good faith and fair dealing, in an amount to be established at trial.

D. On Count IV, Judgment in Plaintiffs' favor and against the Umbrella and Excess Insurers declaring that the Umbrella and Excess Insurers owe Plaintiffs a duty to indemnify for loss, ultimate net loss and costs arising from the Chinese Drywall claims.

E. On All Counts:

    a. Attorney's fees

    b. Costs.

    c. Pre and post-judgment interest.

    d. Any and all such further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all issues.

Respectfully submitted,

Date: March 3, 2010         By:   /s/ *David J. Driscoll*
                                  David J. Driscoll

David J. Driscoll
Kenneth R. Morris
GARLIN DRISCOLL HOWARD LLC
245 Century Circle, Suite 101
Louisville, CO 80027
tel. (303) 926-4222
fax (303) 926-4224
ddriscoll@gdhlaw.com
kmorris@gdhlaw.com

Of Counsel:

Matthew L. Jacobs
Kali N. Bracey
Daniel I. Weiner
JENNER & BLOCK LLP
1099 New York Avenue, NW
Suite 900
Washington, DC 20001
tel. (202) 639-6000
fax (202) 639-6066
mjacobs@jenner.com
kbracey@jenner.com
dweiner@jenner.com

*Attorneys for Plaintiffs*

Plaintiffs' Address
7595 Technology Way
Suite 500
Denver, CO 80237